UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KASEY MARONEY,

                            Plaintiff,

v.                                                                          8:19-CV-1404
                                                                            (GTS/DJS)
VILLAGE OF NORWOOD; SETH DONALIS; and
NORWOOD VILLAGE POLICE DEPARTMENT,

                            Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

WESTFALL LAW PLLC                                      RYAN L. McCARTHY, ESQ.
   Counsel for Plaintiff
247 West Fayette Street, Suite 203
Syracuse, NY 13202

JOHNSON LAWS, LLC                                     APRIL J. LAWS, ESQ.
   Counsel for the Village Defendants         LORAINE CLARE JELINEK, ESQ.
648 Plank Road, Suite 205
Clifton Park, NY 12065

SETH DONALIS
   Defendant, *Pro Se*
9 Hillcrest Avenue
Massena, NY 13662

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Kasey Maroney ("Plaintiff")

against the Village of Norwood, the Norwood Village Police Department (collectively the

"Village Defendants"), and Seth Donalis, is the Village Defendants' motion to dismiss Plaintiff's

claims against them for failure to state a claim upon which relief can be granted.  (Dkt. No. 9.)

For the reasons set forth below, the Village Defendants' motion is granted.

I.      **RELEVANT BACKGROUND**

    A.      **Plaintiff's Complaint**

        Generally, in her Complaint, Plaintiff asserts the following seven claims, all arising from three alleged attempts to sexually assault her by a Village Police Officer (Defendant Donalis) between November 14, 2017, and January 23, 2018: (1) a claim for a violation of her Fourteenth Amendment right to be free from unlawful sexual harassment, abuse and assault while in police custody against all Defendants; (2) a claim of false imprisonment in violation of 42 U.S.C. § 1983 against Defendant Donalis; (3) a claim of municipal liability against Defendant Norwood Village Police Department for the acts of Defendant Donalis because those acts were facilitated by (i) an expressly adopted official policy or longstanding widespread custom, (ii) a lack of institutional control and oversight of officers, and (iii) gross negligence and/or deliberate indifference in hiring, training, and supervising officers; (4) a claim of municipal liability against Defendant Village of Norwood on the same bases as against Defendant Norwood Village Police Department, but also on the bases that Defendant Village of Norwood was grossly negligent in supervising its police department and did not have a policy for terminating officers who had been arrested or convicted of crimes; (5) a claim of state law sexual battery against all Defendants, based on direct action by Defendant Donalis and a theory of respondeat superior as to the Village Defendants; (6) a claim of state law intentional infliction of emotional distress against all Defendants; and (7) a claim of state law false imprisonment against all defendants, based on direct action by Defendant Donalis and a theory of respondeat superior as to the Village Defendants.  (Dkt. No. 1, at ¶¶ 38-103 [Pl.'s Compl.].)

B.      **Parties' Briefing on the Village Defendants' Motion to Dismiss**

1.      **The Village Defendants' Memorandum of Law**

Generally, in their motion to dismiss, the Village Defendants make three arguments. (Dkt. No. 9, Attach. 1, at 13-31 [Village Defs.' Mem. of Law].)  First, the Village Defendants argue that the Village of Norwood Police Department is not a proper party in this action because it is merely a subdivision of the Village of Norwood and is not legally an independent suable entity.  (*Id.* at 13-14.)

Second, the Village Defendants argue that Plaintiff has failed to state a federal claim against them.  (*Id.* at 14-26.)  More specifically, the Village Defendants argue the following: (a) Plaintiff has failed to allege facts plausibly suggesting that the Village Defendants were aware that their police officers were prone to committing sexual offenses such that the Village Defendants can be said to have failed to supervise their officers, and has failed to allege facts about any other officer who has committed a sexual assault; (b) Plaintiff has failed to allege facts plausibly suggesting that the Village Defendants failed to screen officers when hiring because she has not alleged facts indicating that there was anything in Defendant Donalis' background that would have shown that he was predisposed to sexual assault or other misconduct, or that he in fact had any history of prior wrongdoing; (c) Plaintiff has failed to allege facts plausibly suggesting that the Village Defendants failed to adequately train or discipline its officers because she has not alleged any example of training (or lack thereof) that led to predictable constitutional violations, any pattern of misconduct from which the Village Defendants would have had notice that its officers would question whether it is proper to sexually assault civilians while on duty, or that the question of whether to assault civilians was a "difficult choice" with which any training

3

could help; (d) Plaintiff has failed to plead a *prima facie* case that Defendant Donalis was acting

under the color of state law when he sexually assaulted Plaintiff because Defendant Donalis was

acting towards his own personal pursuits, and a single unforeseen incident cannot establish

municipal liability; and (e) Plaintiff cannot plead a Fourth Amendment claim because such a

claim is redundant of the Fourteenth Amendment claim.  (*Id.*)

Third, the Village Defendants argue that the pendant state law claims against them also

must be dismissed.  (*Id.* at 26-31.)  As an initial matter, the Village Defendants argue that

Plaintiff failed to comply with the conditions precedent to suit on those claims because she failed

to serve a notice of claim within 90 days of the alleged incident and did not put the Village

Defendants on notice of her intention to file a suit until January 2, 2019.  (*Id.* at 26-28.)  The

Village Defendants also argue that her state law claims nonetheless fail as a matter of law

because (a) sexual assault and battery are outside the scope of a police officer's employment and

thus the Village Defendants could not be held responsible under a theory of respondeat superior,

(b) there are no factual allegations plausibly suggesting that the Village Defendants' actions

constituted extreme and outrageous conduct for the purposes of a claim of intentional infliction

of emotional distress, and (c) the Village Defendants cannot be held liable for false imprisonment

under a theory of respondeat superior for many of the same reasons that apply to Plaintiff's

sexual battery claim, and, additionally, Plaintiff's own Complaint alleges that she freely

consented to travel in a car with Defendant Donalis and she was thus not confined without her

consent.  (*Id.*  at 28-31.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes four arguments.  (Dkt.

No. 14, at 8-30 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that the Court should not

consider any of the evidence submitted by the Village Defendants along with their motion

because such evidence was not part of or referenced in the Complaint.  (*Id.* at 8-17.)  Plaintiff

alternatively argues that, if the Court finds it appropriate to consider the Village Defendants'

evidence, it should also consider additional facts provided by Plaintiff.  (*Id.*)

Second, Plaintiff acknowledges that, as a legal matter, a subdivision of a municipal entity

is not amenable to suit under 42 U.S.C. § 1983, but argues that the Court should not dismiss

Defendant Norwood Village Police Department from this action because there are "no first-hand

allegations or declarations submitted" from which the Court can find that Defendant Norwood

Village Police Department is a subdivision of a municipal entity.  (*Id.* at 17.)

Third, Plaintiff argues that she has alleged facts plausibly stating her claims against the

Village Defendants.[1]  (*Id.* at 18-29.)  More specifically, Plaintiff argues that she has alleged facts

plausibly suggesting that the Village Defendants failed to supervise their officers because (a) the

standard of knowledge and awareness of past conduct that applies to larger police departments

should not be applied to small police departments and thus she should not be required to allege

that the Village Defendants had knowledge of similar prior misconduct by either Defendant

Donalis or any other officer in the department, (b) her allegations that the Village Defendants

should have known about Defendant Donalis' conduct, that another officer was convicted of an

unrelated felony a few months after Defendant Donalis' arrest, and that there was no policy for

---

[1]      Plaintiff alternatively argues that, if the Court should find that she has failed to
state a federal claim, it should either (a) permit her to amend the Complaint to add more
allegations, or (b) dismiss the claims without prejudice to allow her to conduct an investigation
that would potentially reveal further supporting information.  (Dkt. No. 14, at 20 [Pl.'s Opp'n
Mem. of Law].)

terminating an officer convicted of a crime all plausibly suggest that the Village Defendants should be held liable.  (*Id.*)  Plaintiff also argues that, because the Village Defendants did not do anything to stop Defendant Donalis' conduct, they must have known it was happening but did not care.  (*Id.*)  As to the alleged failure to train, Plaintiff admits that there is no reasonable training to stop an officer from committing sexual assault, but argues that there was a failure to train Defendant Donalis' supervisor and coworkers how to confront "suspicious non-conforming behavior from officers like Defendant Donalis."  (*Id.* at 25-26.)  As to the alleged failure to screen when hiring, Plaintiff admits that her Complaint "lacks any specific allegations of failing to screen at hiring," and argues that information on hiring practices is in the hands of the Village Defendants and that she would require disclosures and/or discovery from the Village Defendants to plead additional facts.  (*Id.* at 26-27.)

As to the Village Defendants' arguments about Plaintiff's Fourteenth Amendment claim specifically, Plaintiff argues that Defendant Donalis was acting under the color of law, noting that she alleged facts to the effect that he used his position and authority to coerce Plaintiff into performing sexual acts, and that this was not a single incident because she alleged that Defendant Donalis solicited these sexual acts from her on multiple occasions.  (*Id.* at 27-29.)  Plaintiff also concedes that her Fourth Amendment claim is redundant of her Fourteenth Amendment claim. (*Id.* at 29.)

Fourth, Plaintiff argues that the Court has jurisdiction over her state law claims because, although her notice of claim was defective, she should be permitted to file it late because (a) she notified the St. Lawrence County Sheriff of her claims well within the 90-day period, and (b) the Village Defendants have admitted that they were aware of Defendant Donalis' actions (and thus

her potential claims against them) within a few hours of Defendant Donalis' arrest. (*Id.* at 30.)

### 3.      The Village Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Village Defendants make three arguments. (Dkt. No. 19, at 7-10 [Village Defs.' Reply Mem. of Law].) First, the Village Defendants argue that Plaintiff has not meaningfully opposed its argument that Defendant Norwood Village Police Department is not a proper party, and thus the Village Defendants' motion should be granted in that respect and Defendant Norwood Village Police Department should be dismissed from this action. (*Id.* at 7.)

Second, the Village Defendants argue that Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1983 because she has failed to allege facts plausibly suggesting (a) that the Village Defendants were aware of any propensity of their officers to commit crimes or of any past incidents by officers, (b) that they had any reason to believe that Defendant Donalis was predisposed to crime when he was hired, or (c) there exists any pattern of conduct for which the Village Defendants can be held liable. (*Id.* at 7-9.)

Third, the Village Defendants argue that Plaintiff's state law claims also must fail as a matter of law because (a) Plaintiff's previous memory loss about the incidents involving Defendant Donalis does not excuse her failure to comply with the 90-day notice requirement, and (b) she has failed to oppose the Village Defendants' arguments on the merits of her state law claims. (*Id.* at 9-10.)

## II.      GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

8

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

10

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[2]

## III.   ANALYSIS

As an initial matter, the Court notes that, despite the fact that it is considering a motion to

dismiss, both Plaintiff and the Village Defendants have submitted extrinsic evidence.

Defendants argue that this evidence is either incorporated by reference into the Complaint or

integral to the Complaint.  (Dkt. No. 9, Attach. 4, at 9 n.1 [Village Defs.' Mem. of Law].)  The

Court rejects that argument.  The fact that Plaintiff alleged facts in the Complaint related to the

---

[2]         *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.") [internal
quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d
Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

same occurrences as those discussed in the relevant evidence does not make that evidence integral to the Complaint, nor does Plaintiff specifically reference her testimony at the relevant hearing or trial in the Complaint such that those pieces of evidence were incorporated by reference in the Complaint.  The Court therefore declines to consider the extrinsic evidence submitted along with the parties' papers when determining the sufficiency of Plaintiff's Complaint.

### A.    Whether Defendant Norwood Village Police Department Is a Proper Defendant

After careful consideration, the Court answers this question in the negative for the reasons stated in the Village Defendants' memorandum of law.  (Dkt. No. 9, Attach. 4, at 13-14 [Village Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

It is well established that a municipal police department is not amenable to suit under 42 U.S.C. § 1983 because it is merely an administrative arm of a municipality and does not have a separate legal identity from that of the municipality itself.  *Bradford v. Watertown Police Dept.*, 14-CV-1017, 2015 WL 1349197, at *3 (N.D.N.Y. Mar. 24, 2015) (Dancks, M.J., Hurd, J.); *Fowler v. Kingston City Police Dept.*, 07-CV-0873, 2009 WL 3064775, at *9 (N.D.N.Y. Sept. 22, 2009) (Kahn, J.); *Dotson v. City of Syracuse*, 04-CV-1388, 2006 WL 8453553, at *8 (N.D.N.Y. Mar. 21, 2006) (Mordue, C.J.); *Baker v Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (Hurd, M.J.).

Plaintiff does not dispute that this is the law.  Rather, Plaintiff argues that more evidence is needed to determine whether Defendant Norwood Village Police Department is in fact an administrative arm of Defendant Village of Norwood.  (Dkt. No. 14, at 17 [Pl.'s Opp'n Mem. of Law].)  Plaintiff's argument has no merit given that she acknowledges in her Complaint that

Defendant Village of Norwood "employs the Village of Norwood Police Department for its law enforcement needs," and that Defendant Norwood Village Police Department is "the department of law enforcement for Defendant Village of Norwood."  (Dkt. No. 1, at ¶¶ 8-9 [Pl.'s Compl.].)  Because Plaintiff's own Complaint therefore alleges that Defendant Norwood Village Police Department is the administrative law enforcement arm of Defendant Village of Norwood, the Court finds that Defendant Norwood Village Police Department is not an entity amenable to suit and must be dismissed from this action.  In the alternative, the Court can, and does, take judicial notice of this fact under Fed. R. Evid. 201.

     **B.**    **Whether Plaintiff Has Alleged Facts Plausibly Suggesting the Existence of** *Monell* **Liability as to the Village Defendants**

After careful consideration, the Court answers this question in the negative for the reasons stated in the Village Defendants' memorandum of law.  (Dkt. No. 9, Attach. 4, at 14-26 [Village Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

Municipalities cannot be held vicariously liable for the actions of subordinates under 42 U.S.C. § 1983, but rather only for their own illegal acts. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  To state a claim for municipal liability, the plaintiff must allege (a) that she suffered a constitutional violation, and (b) that the violation resulted from a municipal policy or custom. *Pendergraph v. City of Syracuse*, 19-CV-0291, 2020 WL 777254, at *4 (N.D.N.Y. Feb. 18, 2020) (Mordue, J.) (citing *Monell*, 436 U.S. at 694-95).  "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread

13

that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 298 (N.D.N.Y. 2018) (Suddaby, C.J.). "To survive a motion to dismiss, a plaintiff must allege 'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." *Thomas*, 293 F. Supp. 3d at 298.

In her Complaint, Plaintiff alleges the existence of 13 unconstitutional customs, practices, or policies taken by the Village Defendants: (1) a policy of permitting officers to transport citizens to private and secluded dwellings and places; (2) a policy of permitting officers to transport detainees to private and secluded dwellings or places; (3) a policy of permitting officers to dress in street clothing and to use their personal vehicles for conducting police business while on active duty; (4) a policy of permitting male officers to bring female detainees to the police station when no one else is present; (5) a policy of permitting officers to use threats of an unsubstantiated Social Services investigation to coerce detainees to comply; (6) failure to supervise the police department; (7) failure to properly supervise the police department as to the provision of training to officers on not committing and/or preventing sexual assault or coercion against detainees; (8) failure to properly supervise the police department as to the provision of training to officers on recognizing sexual harassment, assault or coercion by officers against detainees; (9) failing to properly supervise the police department as to the provision of training to officers on probable cause and the lawfulness of detentions; (10) failure to properly supervise detainees or civilians in the police department's custody; (11) failure to discipline officers who

14

create threats to detainee safety; (12) failure to implement a warning system to prevent sexual abuse and sexual assault among officers and trainees; and (13) failure to ensure that former detainees are free from harassment and intimidation by police officers upon their release.  (Dkt. No. 1, at ¶ 76 [Pl.'s Compl.].)  Plaintiff also alleges that the Village Defendants were grossly negligent and/or deliberately indifferent in screening officers for hiring purposes, and in failing to implement any policy to terminate officers who are arrested for or convicted of criminal activity. (*Id.* at ¶¶ 77-78.)  Finally, Plaintiff alleges that "Defendant Village of Norwood had actual and/or constructive knowledge of the deficient polices, practices and customs alleged above," and that it "condones, tolerated and through its own actions (or lack thereof) ratified such policies" in deliberate indifference to the foreseeable effects and consequences of those policies.  (*Id.* at ¶¶ 85.)

With regard to the various unconstitutional policies that Plaintiff alleges, she alleges that the Village Defendants had five such policies, all of which relate to permitting officers to engage in certain conduct.  As an initial matter, Plaintiff has not provided any factual allegations plausibly suggesting that the Village Defendants has adopted any of these as formal, official policies of the Village or its police department.  She also has not provided any factual allegations that the policies were made by municipal officials with decision-making authority or that they were widespread or consistent practices.  In particular, Plaintiff does not provide any factual allegations about any officer engaging in the conduct that these policies allegedly permitted other than Defendant Donalis on the occasions related to Plaintiff's claims.

It is well established that isolated acts by non-policymaking officials do not ordinarily show a municipal custom or policy.  *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir.

15

2012); *see McLennon v. City of New York*, 171 F. Supp. 3d 69, 95-96 (E.D.N.Y. 2016) (finding that allegations of six incidents of unlawful seizures at traffic checkpoints were insufficient to show a municipal custom).  Additionally, the alleged municipal policy must be "the moving force behind the constitutional violation" in order to be the basis for municipal liability.  *City of Oklahoma City v. Tuttle*, 471 U.S. 8-8, 820 (1985).

Here, even if the alleged policies provided situations that facilitated Defendant Donalis' ability to commit the alleged acts by providing opportunities where he was alone with detainees or civilians, the policies would not have resulted in any constitutional injury absent Defendant Donalis' independent actions and choice to unlawfully coerce and sexually assault Plaintiff.  To find that the Village Defendants can be held liable because Defendant Donalis independently (and without their knowledge) took advantage of otherwise benign policies to abuse his power and authority as a police officer would widen municipal liability beyond its intended scope, particularly because Plaintiff has not alleged facts plausibly suggesting that the Village Defendants were or should have been aware that such policies were being abused, much less in a widespread or consistent matter.  The Court therefore finds that Plaintiff has not alleged facts plausibly suggesting that the alleged policies were themselves the moving force behind the alleged constitutional violation.

With regard to the failures to supervise and train that Plaintiff alleges, she alleges that there were eight such failures.  To allege the requisite deliberate indifference for stating a failure to train or supervise claim, the plaintiff must allege that (a) "a policymaker knows to a moral certainty that her employees will face a given situation," (b) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or

16

that there is a history of employees mishandling the situation," and (c) "the wrong choice by the . . . employees will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).

As to Plaintiff's allegation that Defendant Village of Norwood failed to properly train or supervise their police officers in multiple ways, the Court finds that Plaintiff has failed to allege facts plausibly suggesting any such failure. Plaintiff firstly alleges that Defendant Village of Norwood failed to appropriately train or supervise officers on "not committing and/or preventing sexual assault and coercion against detainees"; but, as the Village Defendants argue, whether to sexually assault a detainee or other civilian or to illegally coerce a detainee or civilian into sexual contact while one is on official duty is hardly a difficult choice that training will make less difficult, much less a situation that a supervisor or policymaker would know "to a moral certainty" that police officers will face on duty, especially given that Plaintiff has not alleged any facts related to previous instances of any officer of the Norwood Village Police Department acting in a similar manner of which the Village Defendants were aware. *See Ellis v. Washington*, 409 F. Supp. 3d 148, 155 (W.D.N.Y. 2019) (finding no failure to train where plaintiff had not shown that county employees "require some sort of training to educate them that they should not be sexually harassing and raping people under their supervision" where there had never been any complaints of sexual harassment about the defendant or at the specific work location).

Plaintiff secondly alleges that Defendant Village of Norwood failed to appropriately supervise or train its officers in recognizing sexual assault, harassment or coercion by other officers; but she fails to allege facts plausibly suggesting that the lack of such supervision or training resulted in the alleged constitutional violations. Notably, the allegations in the

17

Complaint indicate that Defendant Donalis' inappropriate behavior occurred at times when other officers or relevant Village employees were not present to "recognize" that behavior as inappropriate; rather, Plaintiff alleges that these incidents occurred primarily in Defendant Donalis' car (when she was alone with him) and at the police station (when "no one else was in the building"), with the exception of the sting operation by the St. Lawrence County Sheriff's Office (when Plaintiff wore a wired listening device) which resulted in Defendant Donalis' arrest.  (Dkt. No. 1, at ¶¶ 15-28 [Pl.'s Compl.].)  Without any factual allegations that other officers or supervisors in Defendant Police Department or Defendant Village of Norwood were aware of or present for any of Defendant Donalis' conduct, the Complaint does not plausibly suggest that those officers or supervisors could have recognized that his conduct was improper assault, harassment or coercion, whether or not they had received training on that issue.  To the extent that Plaintiff alleges that officers and supervisors should have recognized that Defendant Donalis was engaged in inappropriate conduct (based on the fact that they would have reviewed his reports related to taking Plaintiff's statements), Plaintiff has not alleged facts plausibly suggesting that those reports included information from which an officer or supervisor would have suspected that Defendant Donalis was engaged in constitutional violations.  Plaintiff's vague allegation that the Village Defendants failed to supervise detainees or civilians in police custody is also insufficient for many of the reasons already discussed, including that the Village Defendants had no reason to know with moral certainty that supervision was required to keep officers from sexually assaulting and coercing detainees and civilians.

Plaintiff thirdly alleges that Defendant Village of Norwood failed to appropriately supervise or train its officers on probable cause and/or the lawfulness of detentions; but she fails

to indicate how such supervision or training is relevant to her asserted claims.  Notably, although

Plaintiff alleges that Defendant Donalis threatened her with possible arrest for endangering the

welfare of a child and informed her of an investigation into her conduct by Child Protective

Services, such allegations do not indicate unlawful detentions or the lack of probable cause.

(Dkt. No. 1, at ¶¶ 15-17 [Pl.'s Compl.].)  Notably, Plaintiff does not allege that Child Protective

Services is a part of the Village of Norwood or its police department such that there is any

plausible connection between Child Protective Services' investigation and the conduct of the

Village Defendants.  Additionally, although Plaintiff alleges that Defendant Donalis threatened

her with arrest, she does not allege that Defendant Donalis (or any other member of the Norwood

Village Police Department) actually placed her under arrest for any reason or even detained her

on suspicion of endangerment of the welfare of a child.  Specifically, the Complaint indicates

that Plaintiff made an initial statement related to her boyfriend's arrest, and subsequently

voluntarily provided another statement, but there are no allegations that she was questioned or

investigated by the Norwood Village Police Department specifically related to the possible

endangerment charges.  Because Plaintiff has not alleged that she was arrested or detained, any

failure to train or supervise officers on probable cause and lawful detentions did not give rise to

her alleged constitutional violation.

Further, Plaintiff's allegations that unnamed members of the Norwood Village Police

Department harassed her following Defendant Donalis' arrest by pulling her over on multiple

occasions for "trumped up traffic violations" and attempting to "friend" her on Facebook do not,

by themselves, plausibly suggest that she suffered a constitutional violation as a result of a failure

to train or supervise.  Notably, all of Plaintiff's claims of substantive constitutional violations

19

relate to Defendant Donalis' conduct; none of her claims allege an underlying constitutional violation stemming from the actions of any officers after Defendant Donalis' arrest. Additionally, because these alleged instances of harassment occurred *after* Defendant Donalis' arrest, they cannot serve to plausibly suggest a widespread policy or custom of abuse of power or harassment by officers that would have put the Village Defendants on notice of unconstitutional conduct at the time Defendant Donalis engaged in his alleged actions.  As a result, any failure to train officers to recognize the unnamed officers' conduct as harassment or to supervise those officers while they were engaging in such conduct cannot serve as the basis for municipal liability related to her substantive constitutional claims. *See Lee v. Cnty. of Onondaga*, 13-CV-1285, 2016 WL 9441472, at *7 (N.D.N.Y. Aug. 19, 2016) (Sannes, J.) ("It is well-established that absent an underlying constitutional violation, there can be no claim for municipal liability.").

    As to Plaintiff's allegation that Defendant Village of Norwood failed to properly screen candidates when hiring officers, the Court finds that Plaintiff has failed to allege any facts plausibly suggesting that deficiencies in the hiring process resulted in Plaintiff's alleged injury. The only instances of misconduct that Plaintiff alleges are Defendant Donalis' actions relevant to this case, and another officer's arrest for grand larceny and drug possession.  (Dkt. No. 1, at ¶ 77 [Pl.'s Compl.].)  Both of these instances of criminal activity occurred while the individuals were already employed as officers of the Norwood Village Police Department, and thus could not have been considered at the time of these individuals' hiring.  Plaintiff does not allege that Defendant Donalis, the other identified officer, or any other officers of the Norwood Village Police Department had been involved in crimes or other misconduct prior to the time of their hiring. Thus, because Plaintiff has not alleged facts plausibly suggesting that there were any "red flags"

20

of prior criminal or similar conduct at the time any of the officers were hired, Plaintiff has not alleged facts plausibly suggesting that Defendant Village of Norwood failed to reasonably screen when hiring officers, much less that such failure to screen resulted in her alleged constitutional injury. *See Holmes v. Cnty. of Montgomery*, 19-CV-0617, 2020 WL 1188026, at *8 (N.D.N.Y. Mar. 12, 2020) (Kahn, J.) (finding that failure to provide factual details to support a claim that defendants failed to screen hires merited dismissal of the claim).

Similarly, Plaintiff alleges that the Village Defendants failed to discipline officers who created threats to detainee safety; yet she has provided no factual allegations to plausibly suggest that such a failure caused her constitutional violation. Although Plaintiff alleges that the Norwood Village Police Department did not have a specific policy that would require the termination of a police officer who was convicted of a crime, such fact does not plausibly suggest that officers were not disciplined; rather, the fact plausibly suggests merely that termination is a decision to be made on a case-by-case basis by the Board of Trustees and the officer in charge. (Dkt. No. 1, at ¶ 78 [Pl.'s Compl.].) Notably, Plaintiff does not allege that either Defendant Donalis or another officer who was charged with a separate crime four months after Defendant Donalis' arrest (i.e., the only two officers that Plaintiff alleges had engaged in misconduct) are still employed by the Norwood Village Police Department or that they did not receive any discipline as a result of their actions. Without any factual allegations that Defendant Donalis or any other officer were in fact not disciplined for wrongful conduct, Plaintiff's allegation that the Village Defendants engaged in a failure to discipline is a conclusory one that the Court need not accept.

Lastly, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that the

Village Defendants were deliberately indifferent as to any failure to supervise, train, discipline, or screen.  As noted above, Plaintiff offers only a generic allegation that Defendant Village of Norwood had knowledge of the various alleged practices and the actions of Defendant Donalis; yet nothing in her factual allegations plausibly suggests how they had that knowledge of either Defendant Donalis' actions or a risk that such actions could occur.  *See Bd. of Cnty. Comm'rs of Bryan Cnty. Oklahoma v. Brown*, 520 U.S. 387, 410 (2004) (noting that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of an action"); *Jones v Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights.").  Such a boilerplate allegation is not sufficient to plausibly suggest that Defendant Village of Norwood was deliberately indifferent to the actions of officers in the Norwood Village Police Department.

For all of the above reasons, the Court finds that Plaintiff has not alleged facts plausibly suggesting that the Village Defendants can be held liable for Defendant Donalis' conduct on her Section 1983 claim.

### C.    Whether Plaintiff's State Law Claims Against the Village Defendants Should Be Dismissed as a Matter of Law

After careful consideration, the Court answers this question in the affirmative for the reasons stated in the Village Defendants' memorandum of law.  (Dkt. No. 9, Attach.4, at 26-31 [Village Defs.' Mem. of Law].)  To these reasons, the Court adds the following analysis.

As an initial matter, the Court finds that, contrary to the Village Defendants' argument, it

is proper for the Court to exercise supplemental jurisdiction over Plaintiff's state law claims at this time because those claims are related to the conduct underlying her federal law claims, and because, although the Court has found that the 42 U.S.C. § 1983 claims against the Village Defendants must be dismissed, the federal claims against Defendant Donalis remain a part of this action. The Court therefore finds no basis at this time for declining to exercise supplemental jurisdiction over Plaintiff's state law claims to the extent they may be viable against the Village Defendants. Even if such a basis were to exist, the Court would be justified in exercising its discretion to retain such jurisdiction based on a careful balancing of the considerations of judicial economy, convenience, fairness to litigants, and comity.

The Village Defendants argue that Plaintiff's state law claims against them must be dismissed for lack of jurisdiction due to Plaintiff's failure to serve a timely notice of claim on the Village Defendants. New York law requires that, for tort claims that require a notice of claim as a condition precedent to suit against a municipality, such notice of claim must "be served in accordance with the provisions of this section within ninety days after the claim arises." N.Y. Gen. Mun. L. § 50-e(1)(a). Plaintiff acknowledges in her opposition memorandum of law that she did not serve a notice of claim until January 2, 2019. (Dkt. No. 14, at 30 [Pl.'s Opp'n Mem. of Law].) The conduct underlying Plaintiff's claims occurred on December 4, 2017, and January 23, 2018. (Dkt. No. 1 [Pl.'s Compl.].) Consequently, Plaintiff's serving of the notice of claim approximately a year after the relevant events is clearly beyond the scope of the ninety days required by N.Y. Gen. Mun. L. § 50-e, and she therefore has not filed a timely notice of claim.

However, the Court may, upon application, extend the time to serve a notice of claim (even if that application is made after the commencement of the action), but the extension of time

"shall not exceed the time limited for the commencement of an action by the claimant against the public corporation."  N.Y. Gen. Mun. L. § 50-e(5).  When determining whether to grant such an extension, the Court must consider factors including (a) whether the municipality or its attorney or insurance carrier acquired actual knowledge of the essential facts of the claim within the ninety-day period or within a reasonable time thereafter, (b) whether the claimant was an infant, mentally or physically incapacitated, or deceased before the time to serve the notice of claim, (c) whether the claimant's failure to serve a timely notice of claim was based on her justifiable reliance on settlement representations made by the municipality, (d) whether the claimant made an excusable error concerning the identity of the municipality, (e) whether an electronic attempt to serve notice was the result of a failure to the computer system of the municipality or the claimant, and (f) whether the delay in serving the notice of claim substantially prejudiced the municipality in maintaining its defense on the merits.  N.Y. Gen. Mun. L. § 50-e(5).

Plaintiff argues that the Court should grant her request to extend the time to serve the notice of claim (which, as noted above, she served on January 2, 2019) based on the fact that (a) she notified the St. Lawrence County Sheriff's Office of Defendant Donalis' conduct in January 2018, (b) the Village Defendants were aware of the basis for her claims "within hours" after Defendant Donalis' arrest on January 23, 2018, and (c) she was "functionally incapacitated" as a result of trauma-related memory suppression and loss such that she was unable to serve her notice of claim until her memory of the events had sufficiently returned.  (Dkt. No. 14, at 30 [Pl.'s Opp'n Mem. of Law].)

Although the parties seem to agree that Plaintiff served a notice of her claims on the Village Defendants on January 2, 2019, Plaintiff offers no indication that she ever sought leave

from a court (either this Court or a state court) to have the time to serve her notice of claim formally extended.  Plaintiff certainly offers compelling arguments as to why the Village Defendants were likely aware of some of the essential facts underlying her claims within the 90-day period (i.e., Defendant Donalis' conduct to the extent he was arrested and pled guilty to soliciting, accepting, or agreeing to a bribe).  However, her argument ignores the fact that N.Y. Gen. Mun. L. § 50-e(5) does not allow any court to extend the time to serve a notice of claim beyond the time limit allowed for filing the relevant claims, which is one year and 90 days "after the happening of the event upon which the claim is based," pursuant to N.Y. Gen. Mun. L. § 50-i(1).  Thus, any request to file a notice of claim as of February 3, 2020 (when Plaintiff filed her opposition memorandum of law) is untimely and the Court may not grant that request.  The pertinent question is therefore whether Plaintiff's service of the notice on January 2, 2019, constitutes a de facto timely effort to seek an extension of the deadline to serve a notice of claim that would allow this Court to consider whether an extension is appropriate.[3]

After carefully considering the matter, the Court can find no authority for the point of law

---

[3]      The Court notes that the purported notice sufficiently meets the requirements of a notice of claim under N.Y. Gen. Mun. L. § 50-e.  (Dkt. No. 9, Attach. 2, at 2-3.)  Although the letter notice does not explicitly include an indication that it was sworn by either Plaintiff or her attorney, N.Y. Gen. Mun. L. § 50-e(6) indicates that, at any time after the notice of claim is served, "a mistake, omission, irregularity, or defect made in good faith in the notice of claim . . . not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby."  N.Y. Gen. Mun. L. § 50-e(6).  There is no indication that the omission of a statement that the letter is sworn was not made in good faith, or that the Defendants have been prejudiced by the lack of such a statement.  *See Smith v. Scott*, 294 A.D.2d 11, 20 (N.Y. App. Div. 2d Dep't. 2002) (allowing amendment of the notice of claim where the plaintiff omitted a statement that the notice was sworn, the manner in which the claims arose, and a specified item of damages because the information provided made the defendant cognizant of the claims and thus the purpose of the statute was met).

that a (late) service of notice can constitute (whether de facto or otherwise) a timely effort to seek

an extension of the deadline to serve a notice of claim.  Rather, the New York Court of Appeals

has noted specifically that the prohibition against granting an extension to file a notice of claim

that would exceed the time limit for commencement of an action against a public corporation in

N.Y. Gen. Mun. L. § 50-e "means that the application for the extension may be made before or

after the commencement of the action but not more than one year and 90 days after the cause of

action accrued, unless the statute has been tolled."  *See Pierson v. City of New York*, 56 N.Y.2d

950, 954 (N.Y. 1982) (noting specifically that the revisions to Section 50-e did not appear

intended "to abandon the longstanding requirement that the application must be made within a

specified and relatively short period of time"); *Cassidy v. Riverhead Cent. Sch. Dist.*, 128 A.D.3d

996, 997 (N.Y. App. Div. 2d Dep't. 2015) (finding that the plaintiff's late service of claim

[which was filed before commencement of the action but without leave from the New York

Supreme Court] was a nullity due to the late service and his motion for leave to file a late claim

could not be granted because that motion was not made until after the one year and 90 day

limitations period had expired).

        In other words, serving a late claim on a defendant within the one year and 90 day period

is not sufficient; rather, an application to serve an untimely claim must be made to a court within

the one year and 90 day time limit.  As already noted, there is no indication that Plaintiff made

any application to a court related to her late claim before the one year and 90 day period ended.

As a result, the fact that Plaintiff served a late notice of claim before the expiration of the one

year and 90 day time limit does not entitle her to an automatic extension of original 90-day

period for serving the notice of claim because she never made a timely application to any court

26

seeking leave to serve a late notice of claim. *Cassidy*, 128 A.D.3d at 997; *Schwinghammer v. Sullivan W. Cent. Sch. Dist.*, 2 A.D.3d 1126, 1126-27 (N.Y. App. Div. 3rd Dep't. 2003). Additionally, because her current application (as submitted to this Court in her opposition memorandum of law) was untimely, the Court may not exercise discretion to extend the time for her to serve a notice of claim and finds that Plaintiff has failed to meet one of the conditions precedent to suit.[4]  Plaintiff's state law claims must therefore be dismissed.

> **D.      Whether Plaintiff Should Be Permitted an Opportunity to Amend the Complaint**

After careful consideration, the Court answers this question in the negative for the following reasons.

A court should "freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the Court is not required to grant leave to amend where such amendment would be futile, or, in other words, when any amendment would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Byerly v. Ithaca Coll.*, 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003) (Scullin, C.J.).  In determining whether amendments to the complaint would be futile, the Court may consider not only proposed amendments submitted by the plaintiff, but also "all possible amendments" that could be made.  *Panther Partners Inc. v.*

---

[4]      The Court also find that, to the extent that New York law might allow tolling of a statute of limitations based on incapacity, Plaintiff's alleged mental incapacity due to memory loss does not provide a basis for tolling the one year and 90 days limitation, because (a) N.Y. Gen. Mun. L. § 50-e(5) already provides a mechanism for allowing a claimant who was incapacitated during the 90-day period to file a late notice of claim, and (b) it is undisputed that Plaintiff was both represented by counsel and sufficiently capable of serving a notice of claim before the one year and 90 day period expired, given that she in fact did serve a notice of claim during that time period.  Because Plaintiff's alleged incapacity did not therefore prevent her from being able to assert her claims before the one year and 90 day extension period expired, tolling (even if generally available) is not appropriate here.

*Ikanos Communications, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

Here, the Court finds that any opportunity to amend the Complaint would be futile. Plaintiff admits in her opposition memorandum of law that she "does not know who in the Village Defendant's policy making level" knew about Defendant Donalis' relevant actions and conduct during the time when they could have taken action. (Dkt. No. 14, at 23-24 [Pl.'s Opp'n Mem. of Law].) Most notably, Plaintiff makes multiple statements in her opposition memorandum of law to the effect that she would be able to provide facts plausibly suggesting that the Village Defendants knew or should have known of the constitutional violations only after she has the opportunity to conduct an investigation of the Norwood Village Police Department or obtain "proper discovery and possible expert testimony." (Dkt. No. 14, at 20, 24 [Pl.'s Opp'n Mem. of Law].) However, motions to dismiss are designed to prevent precisely such unwarranted fishing expeditions; a plaintiff is entitled to proceed to the discovery phase of litigation only if she has first alleged facts plausibly suggesting a claim. The Court has already determined that Plaintiff has not alleged facts plausibly suggesting that the Village Defendants had knowledge of Defendant Donalis' conduct and/or acted with deliberate indifference regarding that knowledge. Plaintiff's own admission that she does not know what the Village Defendants actually knew (or when they knew it) undermines any argument that she could reasonably allege additional facts that would plausibly suggest knowledge or deliberate indifference. The Court also notes that, even if it were likely to construe (in Plaintiff's favor) the extraneous material that both parties submitted with their papers when determining whether an opportunity to amend is warranted, it would find nothing in that material evidence that would alter its substantive conclusions related to Plaintiff's Section 1983 claims against the Village

Defendants, particularly its conclusion that Plaintiff has not alleged facts plausibly suggesting

that the Village Defendants acted according to a municipal policy or with deliberate indifference.

Overall, Plaintiff has offered no reasonable indication that she could allege facts to plausibly

suggest that the Village Defendants are liable for Defendant Donalis' conduct.

Additionally, as to Plaintiff's dismissed state law claims, she has made no indication that

she could allege facts plausibly suggesting that she met all of the conditions precedent to suit

(and in fact did not challenge the Village Defendants' argument that both her notice of claim and

application for extension were untimely), and thus amendment related to those claims would also

be futile.

For all of the above reasons, the Court denies Plaintiff's request to amend the Complaint

related to the claims asserted against the Village Defendants.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED**; and it is

further

**ORDERED** that the following claims are **DISMISSED**:

      (a)     Claim One against Defendant Village of Norwood and Defendant

               Norwood Village Police Department;

      (b)     Claim Three against Defendant Norwood Village Police Department;

      (c)     Claim Four against Defendant Village of Norwood; and

      (d)     Claims Five, Six, and Seven against Defendants Norwood Village Police

               Department and Village of Norwood, and against Defendant Donalis in his

               official capacity, due to Plaintiff's failure to meet the conditions precedent

to suit under N.Y. Gen. Mun. L. § 50-i and N.Y. Gen. Mun. L. § 50-e; and it is further

**ORDERED** that the following claims **SURVIVE** the Village Defendants' motion:

(a)    Claim One against Defendant Donalis;

(b)    Claim Two against Defendant Donalis; and

(c)    Claims Five, Six, and Seven against Defendant Donalis in his personal capacity, to the extent that the Complaint can be liberally construed as asserting such claims.[5]

Dated: July 27, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[5]    The Court notes that it does not decide here whether the Complaint should in fact be construed as asserting claims against Defendant Donalis in his personal capacity, as such issue was never raised by the Village Defendants in their motion to dismiss.